UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONY MANLEY,

                              Plaintiff,

        -v-

C/O. DAVID GROSSMAN, C/O. LUIS PAGAN,
CAPTAIN GOODWIN, C/O. CALE FOSTER, and
CAPTAIN TANYA JONES,

                              Defendants.

No. 13-CV-1974 (KMK)

OPINION & ORDER

Appearances:

Tony Manley
Auburn, NY
*Pro Se Plaintiff*

Gary Moy, Esq.
Zachary R. Bergman, Esq.
New York City Law Department
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Tony Manley ("Plaintiff"), proceeding pro se, brings this Action against Rikers

Island ("Rikers") Correction Officers David Grossman ("Grossman"), Louis Pagan ("Pagan"),

Cale Foster ("Foster"), Captains Demetria Goodwin ("Goodwin") and Tanya Jones ("Jones"),

and Board of Correction employees Stanley Kreitman ("Kreitman"), John H. Banks, III

("Banks"), and Louis A. Cruz ("Cruz," and collectively, "Defendants").[1]  Plaintiff contends that

the correction officers and captains used excessive force against him during two incidents at

---

[1] The Court notes that the Defendants named in the caption of this Action differ from the
Defendants who have appeared in this case because nowhere in the Amended Complaint is
Kreitman, Cruz, or Banks mentioned.

Rikers, where Plaintiff was being held following a conviction on felony drug charges. Following these incidents, Plaintiff's visitation privileges were indefinitely revoked, but later reinstated subject to certain conditions. Plaintiff contends that Kreitman, Banks, and Cruz played a role in the revocation of his visitation privileges and violated his constitutional rights during that process. Before the Court is Defendants' Motion for Summary Judgment (the "Motion"). For the reasons to follow, Defendants' Motion is granted in part and denied in part.

## I. Background

### A. Factual Background

#### 1. The Events of October 21, 2012

Plaintiff was convicted of felony drug charges on September 13, 2012 in New York State. (*See* Defs.' Rule 56.1 Statement ("Defs.' 56.1") ¶ 8 (Dkt. No. 81).) Following the conviction, Plaintiff was designated to Rikers to await sentencing. (*See id.* ¶ 9.) On October 21, 2012, Cinnamon Perkins ("Perkins"), the mother of Plaintiff's son, visited Plaintiff. (*See* Pl.'s Aff. in Opp'n to Mot. for Summ. J. ("Pl.'s Aff.") ¶ 2 (Dkt. No. 103).) Plaintiff and Perkins discussed family problems and engaged in a verbal dispute. (*See* Defs.' 56.1 ¶ 11; Pl.'s Aff. ¶ 2.) Following the verbal dispute, Plaintiff attempted to leave the visiting room and return to his housing unit. (*See* Pl.'s Aff. ¶ 3.) Grossman, who was working in the control booth at the visiting center, opened a door to allow Plaintiff to exit the room. (*See* Defs.' 56.1 ¶ 12; Pl.'s Aff. ¶¶ 4–5.) Grossman then referred to Perkins as a "Bitch" and told Plaintiff "you and your Bitch need to shut the fuck up." (Pl.'s Aff. ¶ 8 (internal quotation marks omitted).) Plaintiff responded by saying that Perkins was not a "Bitch." (*Id.* ¶ 9.) Grossman then exited the control booth and "approach[ed] [Plaintiff] in a[n] aggressive [and] hostile manner," (*id.*), grabbed Plaintiff's throat, (*see id.*), and struck Plaintiff in the face, (*see id.* ¶ 10). Plaintiff fought back, punching

Grossman in the face. (*See id.* ¶ 15; Decl. of Zachary R. Bergman, Esq. ("Bergman Decl.") Ex.

G ("Pl.'s Dep.") 102 (Dkt. No. 82).)[2] Plaintiff stopped hitting Grossman after Grossman fell to

the ground and said, "please, no more, stop, stop." (Pl.'s Dep. 96 (internal quotation marks

omitted).) Grossman was seriously injured, (*see* Defs.' 56.1 ¶ 15), but Plaintiff suffered only

"minor injuries," (Pl.'s Dep. 108).

Immediately following this altercation, Foster and Pagan escorted Plaintiff to intake

without incident. (Defs.' 56.1 ¶ 19; Pl.'s Statement of Contested Material Facts of Genuine

Issues in Dispute Pursuant to Local Rule 56.1(B) ("Pl.'s 56.1") ¶ 14 (Dkt. No. 94).) Eventually,

Plaintiff was escorted to the facility's medical clinic. (*See* Defs.' 56.1 ¶ 20.) What happened

next is subject to dispute.

According to Plaintiff, when Pagan, Jones, "a John Doe male captain," and Foster learned

about Grossman's physical condition, they "plotted" to retaliate against Plaintiff. (Pl.'s Aff.

¶ 17.) As Plaintiff was being escorted to the back of the medical clinic, Pagan ran over and

started punching Plaintiff in the face and upper body. (*See id.* ¶ 18.) Plaintiff and Pagan

exchanged punches, (*see id.* ¶ 19), and, eventually, Plaintiff was taken to the ground and

handcuffed, (*see id.* ¶ 21; *see also* Pl.'s Dep. 134 (Q: Did you get punched more than once? A:

While I was on the floor and my hands [were] behind my back in plastic handcuffs so I couldn't

do nothing. Q: Sir, are you saying that Correction Officer Foster hit you while you were

handcuffed? A: Yes.").) While Plaintiff was on the ground, he was punched and kicked by the

officers standing around him. (*See* Pl.'s Dep. 134; *id.* at 135 ("Q: Do you know if Captain

Goodwin hit you? A: I was on the floor, they all was around me and I was getting punched and

---

[2] Plaintiff's deposition testimony is divided between two separate exhibits. (*See*
Bergman Decl. Exs. G, I.) The Court cites to this testimony as "Pl.'s Dep." without reference to
the particular exhibit into which it may fall.

kicked."); *see also* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") 2 (Dkt. No. 104) ("C[aptains] Goodwin and Jones and C.O. Forster [sic] responded to the incident between I and C.O. Pagan to stop the altercation and used excessive force by kicking me in the face and body when I was taken down to the floor to be restrained.").) At some point during the altercation, Jones kicked Plaintiff and hit him over the right eye and in the back of the head with a baton. (*See* Pl.'s Aff. ¶ 20; Pl.'s Dep. 118 ("Then I got taken down to the floor, then I got hit with a night stick by Captain Jones."); *id.* at 145 ("Q: Were you still engaged with Correction Officer Pagan when you got hit by the night stick? A: No. I was already handcuffed, I told you, I was already down and full restraints. I was already handcuffed.").) Plaintiff claims that Foster hit him several times. (*See* Pl.'s Aff. ¶ 22.)[3]

Defendants' version of events is materially different from that of Plaintiff's. According to Defendants, after Plaintiff was brought to the medical clinic, Plaintiff and Pagan "exchanged words," (Defs.' 56.1 ¶ 21), and Plaintiff assaulted Pagan, (*see id.* ¶ 25). At some point during the assault, an alarm was triggered, (*see id.* ¶ 27), and the "Probe Team," consisting of Goodwin, Foster, and Officer Gaskin, responded, (*see* Bergman Decl. Ex. N ("Goodwin Aff.") ¶ 5). Jones, who was also in the clinic, observed Plaintiff "acting belligerently." (Bergman Decl. Ex. O ¶ 3.) As Goodwin entered the clinic, she saw Pagan utilizing "control holds" on Plaintiff. (Goodwin Aff. ¶ 6.) Plaintiff was subsequently placed in "flex-cuffs" and escorted to intake "without incident." (*Id.* ¶ 7.) Goodwin, Foster, and Jones deny using any physical force against Plaintiff

---

[3] Plaintiff's version of events has evolved over time. Initially, Plaintiff accused Goodwin of participating in the beating, operating under the false belief that Goodwin is "male," (*see* Pl.'s Dep. 250), but Goodwin is female, (*see* Defs.' 56.1 ¶ 46). The Court addresses this discrepancy below.

or observing anyone else using force against Plaintiff. (*See id.* ¶ 9; Bergman Decl. Ex. H ¶¶ 7–8; Bergman Decl. Ex. O ¶¶ 5–6.)

Following the altercation in the medical clinic, Plaintiff was taken to Elmhurst Hospital. (*See* Defs.' 56.1 ¶ 33.) Plaintiff's injuries consisted of a 1.5 inch laceration to his scalp, "multiple hematomas and erythema over multiple surfaces of the scalp," a "hematoma" on his forehead, a scar under his neck, severe lower back pain, and restriction in his range of motion. (*See* Pl.'s Aff. ¶ 25; Bergman Decl. Ex. L.) Doctors examined Plaintiff's back and bruises, cleaned his wounds, and x-rayed his back. (*See* Pl.'s Dep. 291–92.) Plaintiff was given Percocet and "little Band-Aids" on the left side of his head. (*Id.* at 153.) At discharge, Plaintiff reported a pain level of "0/10." (Bergman Decl. Ex. J, at 20.)

## 2. Plaintiff's Visitation Restrictions

On October 25, 2012, a disciplinary hearing was held. (*See* Defs.' 56.1 ¶ 56.) Plaintiff was prohibited from attending. (*See id.* ¶¶ 56–57.) As a result of the hearing, the Board of Correction revoked Plaintiff's visitation rights. (*See id.* ¶ 58.) Plaintiff appealed that decision, (*see id.* ¶ 59), and on March 22, 2013, the Board of Correction reinstated his visitation rights, with certain restrictions. For a year following the Board of Correction's decision, Plaintiff had to be "in full restraints" and "behind the glass" during all visits. (*Id.* ¶ 60 (internal quotation marks omitted).) Plaintiff did not appeal this modification. (*See id.* ¶ 61.)

## 3. Criminal Proceedings

On April 16, 2015, Plaintiff pleaded guilty to Assault on a Peace Officer (N.Y. Penal Law § 120.08) for assaulting Grossman on October 21, 2012. (*See id.* ¶ 38.) During the plea hearing, Plaintiff admitted that he punched Grossman in the face and caused him "serious physical injury" "with the intent to prevent him from performing a lawful duty in his work as a

corrections officer." (Bergman Decl. Ex. F, at 10.) Plaintiff additionally pled guilty to Assault in the Third Degree (N.Y. Penal Law § 120.00(1)) for assaulting Pagan on October 21, 2012. (*See* Defs.' 56.1 ¶ 42.) During the plea hearing, Plaintiff admitted that he intentionally caused Pagan physical injury by punching him. (*See* Bergman Decl. Ex. F, at 10.)

B.  Procedural History

On March 21, 2013, Plaintiff initiated this Action by filing a Complaint. (*See* Dkt. No. 1.) On the same day, Plaintiff filed a complaint in a second case (No. 13-CV-1975), naming Kreitman, Banks, Cruz, Grossman, Pagan, and the "D.O.C." as defendants. (*See* Dkt. No. 2 (13-CV-1975 Dkt.).) This complaint did not include any specific allegations against Kreitman, Banks, Cruz, or Pagan. (*Id.*) On June 12, 2013, then Chief-Judge Loretta A. Preska issued an order stating that "Plaintiff's allegations are not specific as to the personal involvement of Defendants Kreitman, Banks, Cruz, and Pagan," and that Plaintiff was required to "allege how each Defendant, through his own actions, personally violated . . . Plaintiff's due process rights." (*See* Dkt. No. 5, at 4 (13-CV-1975 Dkt.).) On June 18, 2013, Judge Preska issued an Order in this Action directing Plaintiff to file an amended complaint alleging how each Defendant violated Plaintiff's rights. (*See* Order 3 (Dkt. No. 8).) Plaintiff filed an Amended Complaint on July 15, 2013. (*See* Dkt. No. 9.) On August 15, 2013, case number 13-CV-1975 was consolidated with this Action. (*See* Dkt. No. 11.)

Pursuant to a memo endorsement, Defendants filed the Motion and supporting papers on November 7, 2016. (*See* Dkt. Nos. 79–84.) Plaintiff eventually filed opposition papers on January 24 and April 5, 2017. (*See* Dkt. Nos. 94–96, 102–04.) Defendants filed a reply on May 22, 2017. (*See* Dkt. No. 105.)

## II.  Discussion

Defendants make several arguments as to why they are entitled to summary judgment. The Defendants involved in the October 21, 2012 incidents—Grossman, Pagan, Jones, Foster, and Goodwin—argue that they are entitled to summary judgment because: (1) Plaintiff's excessive force claim is barred by *Heck v. Humphrey*, collateral estoppel, and judicial estoppel; (2) Plaintiff's excessive force claim fails as a matter of law; (3) Plaintiff has not demonstrated sufficiently the personal involvement of certain Defendants; and (4) Defendants are entitled to qualified immunity.  The Board of Correction Defendants—Kreitman, Banks, and Cruz—argue that they are entitled to summary judgment because they lack personal involvement in any purported constitutional violation and Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act.  Finally, Defendants contend that the Court should not consider claims belatedly asserted in Plaintiff's opposition papers.

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  Additionally, "[i]t is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also*

*Aurora Commercial Corp. v. Approved Funding Corp.*, No. 13-CV-230, 2014 WL 1386633, at

*2 (S.D.N.Y. Apr. 9, 2014) (same). "However, when the burden of proof at trial would fall on

the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go

to the trier of fact on an essential element of the nonmovant's claim," in which case "the

nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v.*

*PricewaterhouseCoopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal

quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . . , [a

nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were

correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for

trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and "cannot

rely on the mere allegations or denials contained in the pleadings," *Walker v. City of New York*,

No. 11-CV-2941, 2014 WL 1244778, at *5 (S.D.N.Y. Mar. 26, 2014) (internal quotation marks

omitted) (citing, inter alia, *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion

for summary judgment is properly supported by documents or other evidentiary materials, the

party opposing summary judgment may not merely rest on the allegations or denials of his

pleading . . . .")).

　　　　"On a motion for summary judgment, a fact is material if it might affect the outcome of

the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At summary

judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether

there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks

omitted); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. M21-88, 2014 WL 840955, at *2 (S.D.N.Y. Mar. 3, 2014) (same). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988); *Mercado v. Div. of N.Y. State Police*, No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis and internal quotation marks omitted).

### B. Analysis

#### 1. The Claims Against Grossman, Pagan, Jones, Foster & Goodwin

##### a. *Heck v. Humphrey*

Defendants argue that Plaintiff's claims against Grossman, Pagan, Jones, Foster, and Goodwin are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff pleaded guilty to assaulting Grossman and Pagan. (*See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") 7 (Dkt. No. 83).) In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486–87. Accordingly, "when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.

Courts in the Second Circuit have held that excessive force claims brought under § 1983 are barred by *Heck* when the plaintiff-prisoner has pleaded guilty to an offense that includes the element that the defendant-officer was performing a lawful duty at the time of the altercation. For example, in *Wiggins v. Figueroa*, No. 13-CV-1731, 2015 WL 729730 (E.D.N.Y. Feb. 18, 2015), the plaintiff alleged that two correction officers assaulted him during a confrontation in an elevator. 2015 WL 729730, at *1. Prior to initiating the civil action, however, the plaintiff "pled guilty" to "two counts of Assault in the Second Degree" for "assaulting the very same officers" that he sued for attacking him. *Id.* at *4. During the plea allocution for those convictions, the plaintiff admitted that he assaulted the officers and that they were performing a lawful duty at the time. *Id.* In the civil action, the plaintiff claimed that he was attacked "without provocation." *Id.* The court held that the plaintiff's excessive force claim was barred by *Heck* because

> [a] judgment in [the] [p]laintiff's favor would invalidate his criminal conviction because it would negate two required elements of the crime, namely: (1) that [the] [d]efendants were performing a lawful duty, and (2) that [the] [p]laintiff intended to prevent [the] [d]efendants from performing their lawful duty.

*Id. Wiggins* is in line with other cases within the Second Circuit. *See, e.g.*, *Douglas v. Smith*, No. 05-CV-1000, 2009 WL 789450, at *2 (N.D.N.Y. Mar. 20, 2009) (dismissing § 1983 excessive force claim pursuant to *Heck* because the plaintiff admitted during a plea hearing that he intended to prevent the correction officer from performing his lawful duty); *Dye v. Virts*, No. 03-CV-6273, 2004 WL 2202638, at *4 (W.D.N.Y. Sept. 28, 2004) (holding that *Heck* barred claims against a defendant because the plaintiff pleaded guilty to assault in the second degree

"for causing physical injury to [the] defendant . . . in order to prevent him from performing a lawful duty" and the plaintiff's § 1983 claim challenged the elements of that offense).

However, the mere fact that a plaintiff has pleaded guilty to assaulting a law enforcement officer does not necessarily implicate *Heck*. Courts have held that *Heck* does not bar § 1983 claims where a reasonable jury could conclude that the defendant used excessive force on the plaintiff during the altercation giving rise to the assault conviction. In other words, the fact that a plaintiff may have assaulted a law enforcement officer does not excuse a law enforcement officer's use of excessive force. *See Griffin v. Crippen*, 193 F.3d 89, 91–92 (2d Cir. 1999) (holding that the plaintiff's guilty plea on assault charges against correction officers did not bar Eighth Amendment claim); *Prioleau v. Caserta*, No. 10-CV-5670, 2012 WL 5389992, at *7 (E.D.N.Y. Sept. 12, 2012) ("[T]here is nothing about [the] plaintiff's claim that the defendant officers used excessive force when arresting him that would invalidate [the] plaintiff's conviction for attempted assault."), *adopted by* 2012 WL 5389931 (E.D.N.Y. Oct. 29, 2012); *Harley v. Suffolk Cty. Police Dep't*, No. 09-CV-2897, 2012 WL 642431, at *9 (E.D.N.Y. Feb. 28, 2012) ("[The] [p]laintiff's conviction does not preclude her ability to show that even if she assaulted officers at some point during the arrest, their alleged force was still excessive."); *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 543–44 (S.D.N.Y. 2005) (holding that the plaintiff's excessive force claim was not barred by *Heck* because "a jury could reasonably conclude that even though [the plaintiff] assaulted [a police officer], after [the plaintiff] had been subdued, he was subjected to excessive force").

Here, Plaintiff pled guilty to two crimes relating to the events that occurred on October 21, 2012: (1) Assault on a Peace Officer for attacking Grossman and (2) Assault in the Third Degree for attacking Pagan. (*See* Defs.' 56.1 ¶¶ 38, 42.) Under New York Penal Law § 120.08,

"[a] person is guilty of assault on a peace officer . . . when, with the intent to prevent a peace officer . . . from performing a lawful duty, . . . he causes physical injury to such peace officer." "A person is guilty of assault in the third degree when . . . with the intent to cause physical injury to another person, he causes such injury to such person or to a third person." N.Y. Penal Law § 120.00(1).

Defendants contend that Plaintiff's excessive force claim against Grossman is barred by *Heck* because Plaintiff admitted that he caused serious physical injury to Grossman while intending to prevent Grossman from performing a lawful duty. (*See* Defs.' Mem. 10.) Plaintiff asserts that his excessive force claim against Grossman is not barred because Grossman was not performing a lawful duty at the time of the assault. (*See* Pl.'s Aff. ¶ 12.) According to Plaintiff, when Grossman left the control booth he was not performing a lawful duty because Grossman did not get permission from his supervisor to leave the booth. (*Id.*) The Court holds that Plaintiff cannot maintain an excessive force claim against Grossman because Plaintiff's claim directly contradicts his conviction for Assault on a Peace Officer. During the plea allocution, Plaintiff admitted in open court that he assaulted Grossman while Grossman was performing a lawful duty. (*See* Bergman Decl. Ex. F, at 10.) "A judgment in Plaintiff's favor would invalidate his criminal conviction because it would negate two required elements of the crime, namely: (1) that [Grossman] w[as] performing a lawful duty, and (2) that Plaintiff intended to prevent [Grossman] from performing [his] lawful duty." *Wiggins*, 2015 WL 729730, at *4. Accordingly, Grossman is entitled to summary judgment on this claim.

Defendants argue that Plaintiff's excessive force claim against Pagan, Goodwin, Jones, and Foster also should be dismissed because Plaintiff pleaded guilty to assaulting Pagan. (Defs.' Mem. 10–11.) During the same plea allocution described above, Plaintiff admitted that he

caused physical injury to Pagan by punching him. (Berman Decl. Ex. F, at 10.) Defendants contend that Plaintiff's allegations in this Action contradict Plaintiff's conviction because Plaintiff now claims that he was the victim of an assault, rather than the perpetrator. (*See* Defs.' Mem. 11.) The Court finds no merit in Defendants' contention. Construing the facts in the light most favorable to Plaintiff, "a jury could reasonably conclude that even though [Plaintiff] assaulted [Pagan], after [Plaintiff] had been subdued, he was subjected to excessive force by the individual [D]efendants." *Jeanty*, 379 F. Supp. 2d at 543–44; *see also Sales v. Barizone*, No. 03-CV-6691, 2004 WL 2781752, at *13 (S.D.N.Y. Dec. 2, 2004) ("[I]t is well established tha[t] an excessive force claim does not usually bear the requisite relationship under *Heck* to mandate dismissal." (internal quotation marks omitted)). According to Plaintiff, he was taken down to the ground, handcuffed, and then beaten by prison staff. (*See* Pl.'s 56.1 ¶¶ 20–21 (stating that after Plaintiff was taken to the ground Foster hit him several times); Pl.'s Dep. 120 ("Then [Pagan] put me in a body—then he put me in a body hold, then I went down to the floor and then I got jumped by a number of correction officers."); *id.* at 122 ("Once he put me on the ground, he took me down, he—how can a person punch and kick you if he got you in a body hold? So, once he brought me down to the ground, right, he released the body hold and then he start kicking me and punching me with other officers."); *id.* at 134 (Q: Did you get punched more than once? A: While I was on the floor and my hands [were] behind my back in plastic handcuffs so I couldn't do nothing. Q: Sir, are you saying that Correction Officer Foster hit you while you were handcuffed? A: Yes."); *id.* at 135 ("Q: Do you know if Captain Goodwin hit you? I was on the floor, they all was around me and I was getting punched and kicked."); *id.* at 141 ("Q: Now, were you on the ground when Captain Jones hit you? A: Yes.").) Plaintiff's conviction for assault does not preclude him from showing that, at some point during the altercation, the

individuals involved used excessive force against him.  Put another way, Plaintiff did not allocute that those who assaulted him were lawfully performing their duties.  Accordingly, Pagan, Goodwin, Jones, and Foster are not entitled to summary judgment on the basis that *Heck* bars Plaintiff's § 1983 claim.

### b.  Collateral Estoppel & Judicial Estoppel

Defendants argue that Plaintiff's excessive force claim against Pagan, Goodwin, Jones, and Foster is barred by the doctrines of collateral estoppel and judicial estoppel because Plaintiff is attempting to relitigate issues that were decided in the state criminal proceedings.  (*See* Defs.' Mem. 11–12.)

"The collateral estoppel doctrine 'applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings.'" *Russo v. DiMilia*, 894 F. Supp. 2d 391, 407 (S.D.N.Y. 2012) (quoting *Allen v. McCurry*, 499 U.S. 90, 102 (1980)). Collateral estoppel precludes a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *see also Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same).  Thus, "collateral estoppel would bar [an excessive force] claim if the facts actually determined in the plaintiff's prior criminal conviction necessary to that judgment are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Diggs v. N.Y. Police Dep't*, No. 04-CV-1849, 2005 WL 3533158, at *3 (E.D.N.Y. Dec. 22, 2015) (alterations and internal quotation marks omitted).

Similarly, judicial estoppel "prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). "Typically, judicial estoppel will apply if: 1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

Defendants' collateral estoppel and judicial estoppel arguments suffer from the same deficiencies as their *Heck* argument, because the claim at hand—whether Pagan, Goodwin, Jones, and Foster used excessive force against Plaintiff—was not raised in the criminal proceedings. "An assault conviction does not bar an individual from bringing a claim for excessive force under [§] 1983, even where the conviction arises out of the same occurrence and involves the same defendants if excessive force was not relevant to, and not raised in, the criminal action." *Brooks v. Brennan*, No. 12-CV-624, 2014 WL 6975370, at *6 (N.D.N.Y. Dec. 9, 2014); *see Jeanty*, 379 F. Supp. 2d at 544 (holding that the plaintiff's conviction for assaulting a correction officer did not collaterally estop the plaintiff's later excessive force claim brought under § 1983 where the criminal court "did not find that [the] plaintiff was not assaulted nor that [the] plaintiff was not subjected to unnecessary and wanton infliction of pain"). When Plaintiff pleaded guilty to assaulting Pagan, Pagan's use of excessive force was not discussed during his allocution. Nor is Plaintiff's current position inconsistent with the position that he took in criminal court. A reasonably jury could conclude that even though Plaintiff assaulted Pagan, the officers thereafter used excessive force on him. While Plaintiff's conviction for Assault in the Third Degree "certainly cast[s] doubt on his claim," it does not preclude him from raising it here.

*Griffin*, 193 F.3d at 92. Accordingly, Pagan, Goodwin, Jones, and Foster are not entitled to summary judgment on the ground that Plaintiff's claims are barred by collateral or judicial estoppel.

### c. Plaintiff's Excessive Force Claim

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff cannot establish that Defendants acted with the necessary level of culpability, or that the officers' acts were "objectively sufficiently serious." (*See* Defs.' Mem. 15, 19 (internal quotation marks omitted).) Defendants further assert that Plaintiff has not demonstrated sufficiently the personal involvement of Goodwin, Jones, and Foster. (*See id.* at 19.) Because Plaintiff's claim against Grossman is barred by *Heck*, the Court focuses here on whether Pagan, Goodwin, Jones, and Foster are entitled to summary judgment.

At the time of the October 21, 2012 incident, Plaintiff was incarcerated at Rikers, awaiting to be sentenced following a conviction on September 13, 2012 for felony drug charges. (Defs.' 56.1 ¶¶ 8–9.) "Because [P]laintiff's excessive force claim arose *after* he was convicted, it must be analyzed under the Eighth Amendment." *Alston v. Daniels*, No. 15-CV-669, 2015 WL 7257896, at *4 (D. Conn. Nov. 17, 2015). The Eighth Amendment guarantees freedom from "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007 WL 2080517, at *23 (N.D.N.Y. July 19, 2007) ("Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmate[']s health or safety."). Analysis of cruel and unusual punishment claims requires both objective examination of the conduct's effect and a subjective inquiry into

the defendant's motive for the conduct. *See Wright*, 554 F.3d at 268 (citing *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992)); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) ("[A] prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence.").

The objective element focuses on the harm done in light of "contemporary standards of decency," *Wright*, 554 F.3d at 268 (internal quotation marks omitted); *see also Griffin*, 193 F.3d at 91 (noting that the analysis is "context specific, turning upon contemporary standards of decency" (internal quotation marks omitted)), and asks whether "the deprivation alleged is 'sufficiently serious,' or 'harmful enough,' to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Jeanty*, 379 F. Supp. 2d at 540 (internal quotation marks omitted). However, "when prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." *Wright*, 554 F.3d at 268–69 (alteration and internal quotation marks omitted).

The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id.* at 268 (some internal quotations omitted); *see also Vail v. Fischer*, No. 12-CV-1718, 2013 WL 5406637, at *5 (N.D.N.Y. Sept. 25, 2013) (noting that an inmate must plead, "subjectively, that the defendant acted wantonly and in bad faith"). "This inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Perry v. Stephens*,

659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).

In this case, genuine issues of material fact preclude the entry of summary judgment on Plaintiff's claim that prison staff used excessive force against him in the medical clinic. According to Plaintiff, Pagan, Jones, Foster, and "a John Doe male captain" learned that Plaintiff assaulted Grossman and were out for revenge. (Pl.'s Aff. ¶ 17.) After Plaintiff entered the medical clinic, Plaintiff and Pagan exchanged punches, (*see id.* ¶ 19), and then Plaintiff was taken to the ground and restrained, (*see id.* ¶ 21; *see also* Pl.'s Dep. 134 (Q: Did you get punched more than once? A: While I was on the floor and my hands [were] behind my back in plastic handcuffs so I couldn't do nothing. Q: Sir, are you saying that Correction Officer Foster hit you while you were handcuffed? A: Yes.").) While Plaintiff was on the ground, he was punched and kicked by the officers standing around him. (*See* Pl.'s Dep. 134; *id.* at 135 ("Q: Do you know if Captain Goodwin hit you? A: I was on the floor, they all was around me and I was getting punched and kicked.").) Construing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that the officers involved in this incident used force maliciously and sadistically to cause harm. Although Plaintiff's injuries were relatively minor—Plaintiff suffered a 1.5 inch laceration to his scalp, "multiple hematomas and erythema over multiple surfaces of the scalp," a "hematoma" on his forehead, severe lower back pain, and restriction in his range of motion, (Defs.' 56.1 ¶ 35 (internal quotation marks omitted); Bergman Decl. Ex. L; Pl.'s Aff. ¶ 25)—when "prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated," *Wright*, 554 F.3d at 269 (internal quotation marks omitted). Accordingly, the officers who participated in these events are not entitled to summary judgment.

The question, then, is whether Plaintiff has proffered evidence sufficient to demonstrate that Pagan, Jones, Foster, and Goodwin participated in the alleged use of force.  The Court concludes that Plaintiff has proffered sufficient evidence against Pagan, Foster, and Jones, but has not proffered sufficient evidence against Goodwin.  According to Plaintiff, Pagan, Foster, and Jones all used force against Plaintiff after Plaintiff had been taken to the ground and restrained.  (*See* Pl.'s Dep. 120 ("Then [Pagan] put me in a body—then he put me in a body hold, then I went down to the floor and then I got jumped by a number of correction officers."); *id.* at 122 ("Once [Pagan] put me on the ground, he took me down, he—how can a person punch and kick you if he got you in a body hold?  So, once he brought me down to the ground, right, he released the body hold and then he start[ed] kicking me and punching me with other officers."); *id.* at 134 (Q: Did you get punched more than once?  A: While I was on the floor and my hands [were] behind my back in plastic handcuffs so I couldn't do nothing.  Q: Sir, are you saying that Correction Officer Foster hit you while you were handcuffed?  A: Yes."); *id.* at 141 ("Q: Now, were you on the ground when Captain Jones hit you?  A: Yes.").)  To be sure, Plaintiff's description of the abuse has been slightly inconsistent over time, (*compare id.* at 137 (stating that Jones hit Plaintiff with a stick over his eye and in the back of the head), *and id.* at 141 (stating that Jones hit Plaintiff with a "night stick" while Plaintiff was on the ground), *with id.* at 144 (stating that Jones hit Plaintiff while Plaintiff was getting up from the ground)), but these inconsistencies are insufficient to entitle Defendants to summary judgment.  Regardless of whether Plaintiff was on the ground or attempting to get up from the ground, the fact remains that Plaintiff testified that Jones hit him with a "night stick" after Plaintiff had been restrained. (*See id.* at 145 (stating that he was "already handcuffed" and in "full restraints" when he was hit with the night stick).)  Plaintiff additionally had some difficulty recalling how he was hit by

Foster and Jones during his deposition, but he indicated that his memory could be refreshed if he

had his "paperwork," (*id.* at 136), and Plaintiff clarified in his affidavit that Jones hit him with a

baton and kicked him, (Pl.'s Aff. ¶ 20), and that Foster hit him several times, (*id.* ¶ 22). Plaintiff

will have to contend with these inconsistencies at trial, but they are insufficient to hold as a

matter of law that no reasonable jury could find in favor of Plaintiff. *Cf. Jeffreys v. City of New*

*York*, 426 F.3d 549, 555 (2d Cir. 2005) (holding that the defendants were entitled to summary

judgment in part because the plaintiff's testimony was "unsubstantiated by any other direct

evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror

would undertake the suspension of disbelief necessary to credit the allegations made in his

complaint" (internal quotation marks omitted)).[4]

With respect to Goodwin, however, Plaintiff has failed to proffer any evidence that she

participated in the alleged use of excessive force. Goodwin is female, (*see* Defs.' 56.1 ¶ 46), and

denies using force against Plaintiff, (*see* Goodwin Aff. ¶ 9). During his deposition, Plaintiff

stated that Goodwin was male. (*See* Pl.'s Dep. 250.) Perhaps recognizing this issue, Plaintiff

has now backtracked from naming Goodwin as a participant in the alleged use of force. (*See*

Pl.'s Aff. ¶¶ 19–22 (describing the participants in the alleged abuse as Jones, Pagan, Foster, and

"a John Doe male captain"); Pl.'s 56.1 ¶ 20 (stating that a "John Doe male Captain" participated

in the abuse).) Based on Plaintiff's description of Goodwin as male, no reasonably jury could

conclude that Goodwin—a female—participated in the alleged use of force. Goodwin is thus

entitled to summary judgment on this claim. *See Grullon v. City of New Haven*, 720 F.3d 133,

---

[4] Defendants contend that Foster is entitled to summary judgment because Plaintiff
described Foster as being bald and having a gap in his teeth, (*see* Pl.'s Aff. ¶ 22), when in reality
Foster had hair on his head on October 21, 2012 and does not have a gap in his teeth, (Defs.'
56.1 ¶ 50). This discrepancy creates a material dispute of fact because Plaintiff insists that Jones
participated in the alleged use of excessive force.

138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional violation.").

In sum, Plaintiff's excessive force claim may proceed against Pagan, Jones, and Foster, but Goodwin is entitled to summary judgment, as she did not participate in the alleged use of force.

### d. Qualified Immunity

Defendants Pagan, Jones, and Foster argue that even if they violated Plaintiff's rights, "Plaintiff cannot demonstrate that the force allegedly used in these circumstances was unlawful." (*See* Defs.' Mem. 23.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "[Qualified] immunity protect[s] government's ability to perform its traditional functions . . . by helping to avoid unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 566 U.S. 377, 389–90 (2012) (second alteration in original) (internal quotation marks omitted). Qualified immunity shields a defendant from standing trial or facing other burdens of litigation "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) (internal quotation marks omitted). Summary judgment may be granted on the "basis of a qualified immunity defense premised on an assertion

of objective reasonableness [if] the defendant show[s] that no reasonable jury, viewing the evidence in the light most favorable to the [p]laintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (second alteration in original) (internal quotation marks omitted).

Defendants do not dispute, nor could they dispute, that the "right under the Eighth Amendment to be free from excessive force is clearly established." *Johnson v. Hable*, No. 05-CV-451, 2008 WL 4425544, at *5 (W.D.N.Y. Sept. 30, 2008); *see also Bey v. City of White Plains*, No. 10-CV-1887, 2011 WL 6019360, at *5 (S.D.N.Y. Nov. 15, 2011) ("An Eighth Amendment right to be free from excessive force is a clearly established constitutional right."), *reconsidered in part sub nom. Scott v. City of White Plains*, 2012 WL 1267873 (S.D.N.Y. Apr. 10, 2012).  Indeed, it was clearly established as of October 2012 that this right extended to inmates who are handcuffed on the ground.  *See Dallio v. Santamore*, 06-CV-1154, 2010 WL 125774, at *4–5, *14 (N.D.N.Y. Jan. 7, 2010) (citing *Hudson*, 503 U.S. at 9-10) (denying qualified immunity where Plaintiff inmate, after he "punched [a correction officer] in the face," "immediately fell to the ground, was restrained, and ceased physical resistance but was then kicked and punched over twenty times" by "a response team composed of [the] defendants"); *Lewis v. Johnson*, No. 08-CV-482, 2010 WL 3785771, at *3, *22 (N.D.N.Y. Aug 5, 2010), *adopted by* 2010 WL 3762016 (N.D.N.Y Sept. 20, 2010) (denying qualified immunity where "two correction officers tripped [the] plaintiff and then repeatedly punched and kicked him while he was handcuffed on the floor").

Thus, the only contested issue is whether it was objectively reasonable for Pagan, Jones, and Foster to believe that their actions did not violate that clearly established right.  Defendants'

argument suffers from the same deficiencies discussed above; construing the facts in the light most favorable to Plaintiff, Pagan, Jones, and Foster punched, kicked, or hit Plaintiff after he had been taken to the ground and handcuffed. The Court cannot conclude as a matter of law that a reasonable officer would believe that such conduct did not violate the Eighth Amendment. *See Dallio*, 2010 WL 125774, at *14; *see also Shepherd v. Powers*, 55 F. Supp. 3d 508, 516 (S.D.N.Y. 2014) ("Here, summary judgment on the issue of qualified immunity as to [the d]efendants . . . would be inappropriate because, if [the p]laintiff's allegations are true . . . their conduct would have been so malicious and sadistic as to violate clearly established statutory or constitutional rights of which a reasonable person would have known." (internal quotation marks omitted)). Accordingly, Pagan, Jones, and Foster are not entitled to qualified immunity at this juncture.

### e. Failure to Intervene

In opposition to Defendants' Motion, Plaintiff asserts, for the first time, that certain Defendants failed to "intercede when other officers in their presence were using excessive force." (Pl.'s Opp'n 4.) "It is black letter law that a party may not raise new claims for the first time in opposition to summary judgment." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 278 (S.D.N.Y. 2010); *see also Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment."). In the Amended Complaint, Plaintiff asserts that Grossman, Pagan, Jones, Goodwin, and Foster used excessive force against him, but Plaintiff does not allege a failure to intervene. (*See generally* Am. Compl. (Dkt. No. 9).) Plaintiff contends that "an officer can be held liable for failing to intervene and stop officers from using excessive force," (Pl.'s Opp'n 4), but Plaintiff has not identified against whom he

wishes to assert this claim. Because this claim was asserted for the first time in opposition to Defendants' Motion, and Plaintiff has not provided sufficient information about the failure to intervene claim he now seeks to assert, the Court will not consider it at this late stage. *See Avillan v. Donahue*, 483 F. App'x 637, 639 (2d Cir. 2012) (holding that the "district court did not err in disregarding allegations [the pro se plaintiff] raised for the first time in response to [the defendant's] summary judgment motion"); *Wright v. Jewish Child Care Ass'n of N.Y.*, 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014) (holding that pro se plaintiffs are not permitted to assert new claims in opposition to a motion for summary judgment); *Harvey v. N.Y.C. Police Dep't*, No. 93-CV-7563, 1997 WL 292112, at *2 n.2 (S.D.N.Y. June 3, 1997) (disregarding claims that a pro se plaintiff asserted for the first time in opposition to a motion for summary judgment).

### 2. The Claim Against Kreitman, Banks & Cruz

Plaintiff filed suit against Kreitman, Banks, and Cruz because they work for the Board of Correction.[5] Although it is unclear from Plaintiff's filings, the Court infers that Plaintiff believes that Kreitman, Banks, and Cruz played some role in the revocation of his visitation privileges. (*See* Pl.'s Aff. ¶ 29 ("On December 28, 2012[,] Plaintiff appealed this decision to the [B]oard of Correction which consist[ed] of Stanley Kreitman[], John H. Banks III and Louis A. Cruz ESQ.").)[6] Defendants contend that Plaintiff cannot maintain a case against Kreitman, Banks, and Cruz because Plaintiff has not demonstrated these Defendants' personal involvement in the

---

[5] The Court notes that nowhere in the Amended Complaint are Kreitman, Banks, or Cruz mentioned. (*See* Am. Compl.)

[6] In his opposition papers, Plaintiff claims that Kreitman, Cruz, and Banks are additionally liable for failing to intervene during the October 21, 2012 incident. (*See* Pl.'s Opp'n 6.) This claim has no merit because it is undisputed that Kreitman, Cruz, and Banks were not present during that incident. (*See* Defs.' 56.1 ¶¶ 65–66.)

purported deprivation of his constitutional rights, (*see* Defs.' Mem. 23), and Plaintiff did not

exhaust his administrative remedies prior to commencing this Action, (*see id.* at 25).

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the

defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the

plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*,

365 F.3d 107, 122 (2d Cir. 2004). "In this Circuit personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under [§] 1983." *McKinnon*

*v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). A plaintiff seeking to hold a defendant liable

under § 1983 may satisfy the personal involvement requirement by alleging:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). It is an open issue in this Circuit as to

whether all five of these factors survived the Supreme Court's decision in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), *see, e.g.*, *Doe v. New York*, 97 F. Supp. 3d 5, 11–12 (E.D.N.Y. 2015), but the

Court will assume for purposes of this Opinion that all five remain valid, *see Phillip v. Schriro*,

No. 12-CV-8349, 2014 WL 4184816, at *4 (S.D.N.Y. Aug. 22, 2014) ("[U]nless or until the

Second Circuit or Supreme Court rule otherwise, this [c]ourt agrees with the courts that have

held that the *Colon* factors still apply as long as they are consistent with the requirements

applicable to the particular constitutional provision alleged to have been violated." (internal

quotation marks omitted)).

Here, Plaintiff has not demonstrated in what way Kreitman, Banks, or Cruz participated in a violation of Plaintiff's constitutional rights. During his deposition, Plaintiff stated that Kreitman was the person who collected appeal tickets from inmates, (*see* Pl.'s Dep. 159), but Plaintiff did not know whether Kreitman made any decisions regarding Plaintiff's visitation rights, (*see id.* at 164). Plaintiff testified further that Banks and Cruz work for the Board of Correction, (*see id.* at 165, 167), but Plaintiff did not identify what role Cruz or Banks played in the revocation of his visitation rights. Accordingly, Kreitman, Cruz, and Banks are entitled to summary judgment on this claim.

Even if Plaintiff had demonstrated the personal involvement of these Defendants, Plaintiff cannot maintain an action against them because Plaintiff did not exhaust all administrative remedies prior to filing this Action. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (same), and includes actions for monetary damages despite the fact that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures"). Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural

rules.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting

*Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007)

("There is no question that exhaustion is mandatory under the PLRA and that unexhausted

claims cannot be brought in court.").

The PLRA does, however, "contain[] its own, textual exception to mandatory

exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). The Supreme Court recently

explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of
> administrative remedies: An inmate, that is, must exhaust available remedies, but
> need not exhaust unavailable ones. And that limitation on an inmate's duty to
> exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only
> those, grievance procedures that are "capable of use" to obtain "some relief for the
> action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy, although

officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an

"administrative procedure is unavailable when . . . it operates as a simple dead end—with

officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*

Second, "an administrative scheme might be so opaque that it becomes, practically speaking,

incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary

prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable

"when prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Id.* at 1860. These three

circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d

Cir. 2016), but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL

4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

None of these exceptions is applicable here. Following the October 21, 2012 incident, the Board of Correction indefinitely revoked Plaintiff's visitation rights. (*See* Defs.' 56.1 ¶ 58.) Plaintiff appealed that decision, (*see id.* ¶ 59), and on March 22, 2013, the Board of Correction reinstated Plaintiff's visitation rights, subject to certain restrictions, (*see id.* ¶ 60). Plaintiff admits that he did not "pursue the grievance procedure to its end once [he] received a modification because [he] was unaware that the modification required [him] to further exhaust [his] administrative remedies." (Pl.'s Opp'n 6.) Plaintiff's mistaken belief about the about the appeal process, however, does not excuse his failure to exhaust. *See Kearney v. Gebo*, No. 15-CV-253, 2017 WL 61951, at *7 (N.D.N.Y. Jan. 4, 2017) (dismissing a case because the plaintiff's "unreasonable and mistaken belief that he did not need to file a grievance and appeal through the [inmate grievance procedure] d[id] not excuse his failure to exhaust"); *Johnson v. Stevens*, No. 12-CV-5186, 2014 WL 4722711, at *3 (E.D.N.Y. Sept. 22, 2014) ("[The plaintiff's] bare assertion that exhaustion was unnecessary is both incorrect and insufficient to excuse his failure to exhaust administrative remedies."). Accordingly, the PLRA bars the claim Plaintiff has asserted against Kreitman, Banks, and Cruz.

## III. Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. The only claim that may proceed to trial is Plaintiff's excessive force claim against Pagan, Jones, and Foster; Defendants are entitled to summary judgment on all other claims. The Court will hold a conference on October 30, 2017 at 10:30 a.m. The Clerk of Court is respectfully directed to enter judgment in favor of Grossman, Goodwin, Kreitman, Cruz, and Bank, and to dismiss them

from the case. The Clerk of Court is further directed to terminate the pending Motion, (Dkt. No.

79), and mail a copy of this Opinion & Order to Plaintiff.[7]

SO ORDERED.

DATED:     September 27, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[7] The Clerk of Court is additionally directed to terminate Docket Number 78 because the Court has addressed the request made therein. (*See* Dkt. Nos. 89, 91, 98.)